May it please the Court, Jonathan Kagan of the Morell & Manella, representing the Townhall and Juniper Networks. The District Court below made three errors when evaluating this Court's, implying this Court's standard for determining whether personal jurisdiction comports with the due process requirements. The errors all related to the first prong of that three-prong test, the first prong being whether the defendant purposefully directed activities towards the residence of a forum, of the forum, in that case, California. On what basis do you contend that SSL purposefully directed activities at the forum in California? Not purposefully directed activities at the forum, purposefully directed activities at residence of the forum, and that's a distinction. So in the test that this Court has evolved after Burger King, it is not, the question is not whether there was an activity directed at the forum itself, but an activity directed at a resident of the forum. Can I just add, let's assume the suit in Texas was against a California company, but not on this patent, and not for patent infringement, it was on some other basis. Would your position still be the same, that it directed at California residents, and therefore you could have jurisdiction in California? Well, partially. It would satisfy prong one of the test, which is that certainly would be an activity directed at a California resident. But personal jurisdiction would fail in that instance because of the second prong of the test, which is that the lawsuit has to arise out or relate to that activity. So in this case, in the case of Barr, we have a patent case directed at a resident of California on exactly the same patents, some of the same patents that are issued in the Juniper case. In Texas. In Texas. In Texas. I'm having a hard time seeing how this doesn't bump up against Avocen, frankly. And so I guess I'd like to ask you what case of ours you think is closest to this case that goes your way. Well, I think there's not a case that addresses this precise issue, and I suggest that we might not be here. And there's not one in the Supreme Court either. You cite a lot of Supreme Court cases, but it seems to me they're just a general proposition about lack of rigidity and all this stuff, right? Right. The reason the Supreme Court authority is cited and what's important about this case is the Supreme Court has evolved the test, as it indicated in Burger King, from one that relied on actions that had to occur within the forum. So generally speaking, the older view was if you were to be subject to personal jurisdiction in a particular forum, you had to take an act within that forum. In Burger King, the Supreme Court recognized that in light of modern commercial times, that did not make sense. And what it changed the standard to, or expressed the standard as in Burger King, is now its purposeful direction at a resident of a forum. But the facts in Burger King are clearly not the facts here. I mean, that case doesn't really help you get to the result here other than in the general language they used, correct? Right. What Burger King does, though, is it says you don't have to actually do anything in the forum itself. So what SSL has argued in this case is they say we should not be subject to jurisdiction here because we have, in their words, we've studiously avoided going into California. We've stood at the state lines, and we've kept our toes outside of state lines. We've filed our lawsuits elsewhere, so therefore we shouldn't be subject to personal jurisdiction in California. Well, how come in Abyssinia we said you can't go to Alabama, and here we would say you can go to California? Well, in Abyssinia there was no evidence. So there were other cases that were filed in Alabama, but there was no evidence that any of those cases were filed either in Alabama or against Alabama residents. So the Abyssinia case involved patent infringement cases that were brought in the Northern District of California, the Eastern District of Texas, and the International Trade Commission, which is in Washington, D.C. Now, and there was no indication in that case that any of those cases involved an Alabama defendant. So the difference here – so what you have in Abyssinia is there's no evidence of any action purposefully directed against a resident of Alabama. Here, there is evidence of purposeful direction against residents of California. Not only do we have all the cease and desist communications, but we have a lawsuit against a California resident on the exact same patents. So when you look at Abyssinia, what Abyssinia said is you need to have some evidence of an enforcement activity against a resident of that state. We have that. In this case, the activity itself was brought outside the state. So we don't disagree with SSL that in terms of bringing their lawsuit, they managed to keep their toes outside the state line. But they still lobbed that lawsuit in against a California resident, and they directed it against a California resident. In their own lawsuit, they allege that Citrix Online is a California resident. So it's the accidental fact that Citrix is a California resident and someone they happen to sue that entitles your client to pick California as the forum. How about if Citrix happened to be an Alaska resident? Would you be able to sue an Alaska? If we could meet the other standards relating to being in Alaska, I think the answer is I don't think we could. Why not? We couldn't under the third prong of the test that this court has set forth, which is in Breckenridge and Accra. Because there, Alaska has no interest in allowing Juniper, a California resident, to adjudicate its dispute in Alaska. What this court has said is, under the third prong of the test, which is the reasonableness of the suit, this court has said you have to look at whether the interest of the plaintiff is so attenuated with the interest of the state that it's outweighed by the burden on the defendant. So in this case, in the case at Barr, California, under the Electronics for Imaging v. Coil case, has a substantial interest in allowing a forum for its residents to resolve. But that would be insufficient by itself. Do you agree with that? I would. I would. I was responding to the question of why would Alaska not make sense for Juniper to bring a lawsuit. So you're limiting conditions. One of the things that you can imagine that this would be concerned about is are there any limits to this new personal jurisdiction you're trying to get us to declare. Your limiting conditions are then that the plaintiff has to be a resident of the state in which the suit is being sought to be brought, and the accidental suit by the defendant against some other entity, that other entity has to also be a resident of the plaintiff's state. Is that the limiting conditions you would put? Well, I don't see it as imposing new limiting conditions. What I see is an application of the rule that this court has set forth. Yeah, but is that a fair characterization of our precedent? It is. I would say that it is extremely fair. It is exactly what this court has set. If you look at the first part of the test, purposefully directed activities against residents of the forum. So here there's a lawsuit against a resident of California. I don't know if you choose to characterize that as accidental. So you're tying this to the fact that Citrix has a place of business in California, not simply that they're selling arguably infringing products there. That's right. In this case, Citrix Online, one of the defendants, is a resident of California. This is one of the errors the district court made. We allege that. It's uncontroverted. It's in SSL's briefs, pleadings below. One of the defendants is a California resident. See, when you say purposefully, it makes it sound like they picked out this particular Citrix plaintiff or defendant because they had some purposeful thing in mind that relates to you. In fact, it just probably was accidental in terms of your relationship that Citrix happens to be or have an office in California. Nothing purposeful about it from the viewpoint of your suit. And I'm trying to be sure that if we were to hold for you and then suddenly a year sometime later, inevitably, we would have more lawsuits up here citing to this remarkable case, that we wouldn't know where the boundaries are. Well, let me start by saying, with regard to it being an accident, this court has held in ACRA that when you're purposefully directing activities towards a resident of the state, it doesn't have to be the party against whom this lawsuit is enabled. It can be against any resident of the state. That's an express holding of this court. So the relationship between Juniper and SSL or Juniper and Citrix Online, this court has held, is not relevant for the purpose of conducting the inquiry into whether there has been a purposeful act directed against a California resident. And here, we know that when SSL chose to sue, they picked a California resident to go after. So again, I don't know if we characterize that as an accident. I think they knew, they asserted in their pleadings this was a California resident. They filed a lawsuit against a California resident. They knew they were going against a California resident. That's clear. So the fact that it's not Juniper, according to this court's precedent, is irrelevant. What Juniper has to look at, the first prong is satisfied because they did file a lawsuit against a California resident. The second prong is also satisfied in this case, and Judge Pross, this deals with your question, because there's no dispute. It's uncontroverted that the patents are the same. Some of the patents are the same, identical in the Citrix lawsuit and in the Juniper lawsuit. So then the question, it really comes down to the third prong, the fairness prong. And that is, as this court has said, is the interest between Juniper and the state so attenuated that the burden on SSL greatly outweighs it? And what we know from the electronics for imaging versus coil case, California has a substantial interest in giving its residents a form to address charges of infringement. We also know from this court's precedent and from common sense that a California resident has an interest in having a California court. It's more convenient for a California court to resolve that dispute. And there's really been no evidence of burden that's presented. And under this court's precedent, it is SSL that has the burden on this point. And it has to present a compelling case. Mr. King, would you like to reserve your rebuttal tonight? I would. Thank you. Mr. Vickery, good morning. Good morning, Your Honor. May it please the court. Before I address this court's precedent, I just want to address, discuss something in the record that I think goes to the heart of this court's concern. What we have here in the Citrix, the Texas lawsuit, the two Citrix entities are both Delaware entities. They're Delaware corporate entities. One is headquartered in Florida. One is headquartered in California. Speak up, please. I apologize. We can all hear you. The specific products identified in the record, and Juniper makes a significant issue about this, they are the Citrix Systems products, Citrix Systems being the one headquartered in Florida. And the Juniper specifically states at page 14 of its opening brief, SSL has purposefully directed its activities at residents of the forum by suing California resident Citrix Online and seeking to enjoin activity at its affiliate Citrix Systems Silicon Valley regional and divisional headquarters relating to two allegedly infringing products that Citrix Systems creates and maintains in Santa Clara, California. So, and repeatedly throughout its briefs, it addresses these accused products, and we're seeking an injunction against these products, and they happen to be made at its regional headquarters in California. Adopting Juniper's argument would mean that by filing that lawsuit in Texas, SSL has now created specific jurisdiction in Delaware, Florida, and California, and let's just say that the systems, the products were not developed at the Florida company's California regional headquarters. Let's say they were developed and maintained in Ohio or partially in Ohio and partially in Illinois. Now we've created perhaps six different states in which SSL, by filing suit, by seeking to enforce its patents in Texas, has now opened up six different examples of specific jurisdiction. This court has repeatedly emphasized in this jurisdictional calculus the importance of the location of the enforcement activities, and if it's not enforcement, then the location of exclusive licenses. And I agree that the enforcement doesn't have to be judicial. It could be extrajudicial, but in VIAM, it was important. Defendants had earlier filed suit in the same forum, same district court, same patent. Campbell-Pett, there it was extrajudicial enforcement, but the patent owner had gone to the Seattle trade show and tried to get the trade show officials to yank a product off the shelf. In some respects, it's not unlike the Lake case on which Juniper heavily relies, the Lake case where the attorney in California obtains an ex parte order knowing that it's going to be used by Idaho authorities to try to arrest custody of a minor child in Idaho. That wouldn't be too different from the patent owner in Campbell-Pett not actually attending the trade show in Seattle, but calling from Idaho to Seattle and saying, hey, yank these goods off the shelf because they infringed my patent. Avocent. This court emphasized in Avocent that the other activity was confined to enforcement of patents in the forum or exclusive license activity. This court also pointed out in Avocent that state lines are important, and for the reasons I discussed at the beginning, it's particularly important in this case because under these facts, state lines would become very blurred. Let's say, again, the products are not only manufactured in California. Let's say they're manufactured in Illinois and Ohio. So if Juniper's argument is accepted, the test, the revised test would result in a tangled inquiry on jurisdiction. So we respectfully request that the judgment be affirmed. Thank you very much. Thank you. Mr. Kagan. Two points very briefly. The first is the argument of counsel, which is also in their brief, that Avocent confined jurisdiction to instances where there is a judicial or extraditional proceeding brought in the forum or an exclusive licensee. This is the allegation. It's an argument made on pages 3 to 4 of their brief. It's simply not the case. If you read Avocent, they cite to page 1334. What Avocent does is it provides examples of cases where this court has found jurisdiction sufficient. And you can look in the Avocent case, but they actually provide the block quote at page 12 of their brief. It says, these are examples of cases where we have found jurisdiction, and it is cases of the cases that he's described in additional cases involving judicial proceedings, extraditional proceedings, and exclusive licenses. But to argue that that is confined is- But all of those examples relate to activities in the forum. The examples that were in Avocent related to those. But there's a difference between saying here's a list of things and this is a confined list. But there's also a difference between an activity that's purposefully directed to the forum or even purposefully directed to residents of the forum than the situation here where the lawsuit is that you're looking to support a basis for jurisdiction in California is a lawsuit that was filed in Texas that was not purposefully directed to that forum. It's just fortuitous or coincidental or happenstance that Citrix happens to have a facility in California. Well, I'm not- And I want to correct something that counsel said about Juniper's argument. Juniper's argument isn't that because they happen to have a facility in California, they should be subject to jurisdiction in California. Our argument is if you look at the first prong of the test, which is where the action is purposely directed against a resident of California, the Citrix Online is a resident of California. That is an uncontroverted fact that is taken as true for purpose of this appeal and for this decision. So the question is, are they a resident of California? Citrix Online is a resident of California. Did SSL direct activities towards a resident of California? They did direct an activity toward a resident of California. They directed it from staying outside of state lines. So they've done what Burger King said you can do, which is you can direct activities at the residence of a state without ever going into a state. We are not arguing for a revision of this court's standard for determining personal jurisdiction. We are asking you to apply it. Apply the three factors and ask, number one, is Citrix Online a resident of California? Yes, they are. Did SSL direct an enforcement activity against them? Yes, they did, from Texas. Is it related to this action? Yes, it is. Same happens. And then under the final prong, the fairness, have they met their burden of presenting a compelling case of why it would be unreasonable for this case to proceed in California? And they haven't. I assume what brings you all the way up here on this rather narrow procedural issue is you're trying to avoid being sued, presumably in Texas, by SSL at some time down the road. Is that fair? Texas or some other jurisdiction. We want to remove the platform. Let's assume the Eastern District of Texas, since that seems to be a forum they like. Let me ask you this question. If they sued you in the Eastern District of Texas, do you think you could move for a change of venue under our new venue process to get you back to California? We might try. I don't know. Certainly one of the arguments that would be made is, well, the Eastern District of Texas now has familiarity with these very patents, so there would be judicial efficiency in allowing the case to move forward in the Eastern District of Texas. That's certainly something I would expect in opposition. And I don't know what the outcome would be. All right. Thank you very much.